## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **KRISTOPHER WILLIS AND SETH PALUMBO,** **PLAINTIFFS,** | § § § | |
| **V.** | § § | **Civil Action No.: 4:25-cv-02140** **JURY DEMANDED** |
| **CHRISTOPHER BOLIN, SHANE WYRICK, ANTHONY MACIAS, JOHNATHAN GONZALEZ, MARTIN GARCIA, ROLAND PEREZ, SHERIFF ED GONZALEZ, and HARRIS COUNTY DEFENDANTS.** | § § § § § § § § | |

## FIRST AMENDED COMPLAINT

Plaintiffs, KRISTOPHER WILLIS, JR. and SETH PALUMBO, and file this First Amended Complaint against Defendants CHRISTOPHER BOLIN, SHANE WYRICK, ANTHONY MACIAS, JOHNATHAN GONZALEZ, MARTIN GARCIA, ROLAND PEREZ, SHERIFF ED GONZALEZ, and HARRIS COUNTY in their individual capacities, and respectfully show as follows:

## I. INTRODUCTION

This Civil Rights action arises from a coordinated and unjustified series of constitutional violations, including but not limited to excessive force, unlawful arrest, and retaliatory conduct by multiple deputies, Bolin, Wyrick, Macias, Gonzalez, Garcia, and Perez of the Harris County Sheriff's Office.   On April 6, 2023, while peacefully observing a traffic stop and attention to assist a friend, Plaintiff Willis was seized,

arrested, and jailed without lawful justification.  Plaintiffs seek redress for these as well as a result of exercising their First Amendment rights to observe and record law enforcement officers from a public space.  Redress is also sought for the failure of Harris County and its policymakers, including Sheriff Ed Gonzalez, to remedy a pattern of unconstitutional conduct.

While lawfully standing on a public sidewalk, Plaintiff, Willis, witnessed and filmed a traffic stop involving Deputy Christopher Bolin. Plaintiff's peaceful observation and recording of the officer's conduct resulted in unlawful and retaliatory arrests, accompanied by excessive and unjustified use of force.

Plaintiff, Palumbo was trying to be a good citizen and friend was accused of traffic crimes, misdemeanors,

Despite being unarmed, non-threatening, and fully compliant, Plaintiffs were forcibly detained and subjected to mental and physical abuse.

Collectively, Deputies Bolin, Wyrick, Macias, Gonzalez, Garcia, and Perez arrived on the scene, observed the events unfold, engaged in said events, and failed to intervene to stop the misconduct. Instead, the deputies actively participated in the unlawful arrest and detention of Plaintiffs and contributed to the fabricated narrative used to justify the charges.

Plaintiffs bring this civil rights action to hold each Defendant accountable for violating clearly established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as applicable provisions of Texas state law.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the claims arise under federal law, including 42 U.S.C. § 1983. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) for the enforcement of civil rights. Supplemental jurisdiction over Plaintiffs' state law claims is proper under 28 U.S.C. § 1367(a).

Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because all events and omissions giving rise to these claims occurred in Harris County, Texas.

## III. PARTIES

1.      Plaintiff KRISTOPHER WILLIS, JR. is a resident of Harris County, Texas, and a United States citizen. He was unlawfully detained, arrested, and subjected to threats, intimidation, and humiliation on April 6, 2023.

2.      Plaintiff SETH PALUMBO is also a resident of Harris County, Texas, and a United States citizen. He was subjected to excessive physical force and unlawfully arrested on April 6, 2023.

3.      Defendant, CHRISTOPHER BOLIN, at all relevant times, law enforcement officers employed by the Harris County Sheriff's Office, acting under color of state law and within the course and scope of his employment with Harris County. He is sued in his individual capacities.

4.      Defendant, SHANE WYRICK at all relevant times, law enforcement officers employed by the Harris County Sheriff's Office, acting under color of state law and

within the course and scope of his employment with Harris County. He is sued in his individual capacities.

5.      Defendant, ANTHONY MACIAS at all relevant times, law enforcement officers employed by the Harris County Sheriff's Office, acting under color of state law and within the course and scope of his employment with Harris County. He is sued in his individual capacities.

6.      Defendant, JOHNATHAN GONZALEZ at all relevant times, law enforcement officers employed by the Harris County Sheriff's Office, acting under color of state law and within the course and scope of his employment with Harris County. He is sued in his individual capacities.

7.      Defendant, MARTIN GARCIA at all relevant times, law enforcement officers employed by the Harris County Sheriff's Office, acting under color of state law and within the course and scope of his employment with Harris County. He is sued in his individual capacities.

8.      Defendant, ROLAND PEREZ, at all relevant times, law enforcement officers employed by the Harris County Sheriff's Office, acting under color of state law and within the course and scope of his employment with Harris County. He is sued in his individual capacities.

9.      Defendant, Harris County is a municipal entity subject to suit under 42 U.S.C. § 1983.

10.     Defendant, Sheriff Ed Gonzalez, at all relevant times, duly elected Sheriff of Harris County and Policymaker in the area of law enforcement of the Sheriff's Office

for Harris County, acting under color of state law and within the course and scope of his employment with Harris County. He is sued in his official and individual capacities.

## IV. FACTUAL BACKGROUND

11.    On April 6, 2023, started as a typical early-release school day for Kristopher Willis, Jr., a seventeen-year-old African American student at Langham Creek High School. At approximately 1:00 p.m., Willis left school, stopped briefly for gasoline, and grabbed a quick bite to eat for lunch.

12.    It was an ordinary afternoon, with nothing suggesting it would become a traumatic day marked by violence, humiliation, and wrongful arrest.

13.    After finishing lunch, Willis turned onto FM 529 in front of his high school. Suddenly, without any prior indication of trouble, his car began malfunctioning.

14.    The vehicle had been running smoothly moments earlier, and Willis, always cautious and responsible, did not anticipate running out of gas. Carefully guiding his car, Willis maneuvered it into the center turning lane to ensure traffic could safely continue flowing around him. and not impede traffic, which he did so successfully.

15.    Recognizing his precarious situation, Willis called a close friend, who was riding as a passenger with Seth Palumbo, another African American student from Langham Creek. Palumbo and Willis had been classmates and friends for years, always eager to help each other. Palumbo immediately responded, promising to arrive quickly and do what he could to help.

16.    Willis then responsibly sought further assistance, searching online to locate and call the Harris County Sheriff's non-emergency line.

17.    A male dispatcher answered, listened attentively, and reassured Willis that he was handling the situation correctly, he should remain safely in the center lane until help arrived.

18.    Feeling comforted by this instruction, Willis patiently awaited the arrival of his friends.

19.    Soon after, Palumbo and the passenger friend arrived, pulled up safely behind Willis's vehicle.

20.    Willis explained his situation, handing Palumbo a few empty containers, hopeful that they could quickly retrieve gasoline from a nearby station. It seemed a straightforward and responsible solution.

21.    Palumbo returned to his vehicle, intending to turn left toward a nearby gas station. As he turned, Palumbo noticed several Harris County Sheriff's cruisers positioned in a parking lot near the local L.A. Fitness facility.

22.    Without warning, Deputy Christopher Bolin dramatically caused his squad car to dart towards the teen, jump a curb, aggressively pull Palumbo over, joined almost instantly by four other deputy cruisers, including a partially unmarked "ghost" car, which heightened Palumbo's anxiety and confusion.

23.    Seeing this sudden and intimidating police presence swarm Palumbo's vehicle, Willis immediately became deeply concerned for his friend's safety.

24.    Willis cautiously exited his vehicle, careful not to interfere, but positioned himself at a safe distance where he could clearly see and document the rapidly unfolding events.

25.    Willis calmly activated his cell phone's video camera to record the deputies' actions.

26.    Palumbo scrambled to find his driver's license and insurance information. His confusion quickly turned to fear as he watched two deputies swiftly approach his vehicle with their guns drawn and pointed directly toward him, although he was not a threat of harm to anyone.

27.    The deputies' shouted orders. Palumbo placed his hands visibly onto the steering wheel.

28.    Deputy Bolin then approached Palumbo, falsely asserting that Palumbo had made an illegal turn, and demanded identification from Palumbo and his passenger. Neither had committed any crime.

29.    The passenger, understandably confused, questioned why Bolin needed his identification. Bolin escalated the situation in response without explanation or justification.

30.    Bolin immediately grew irate, grabbing Palumbo's left wrist and violently snapping a handcuff onto it.

31.    Palumbo repeatedly asked why he was being arrested, his voice trembling in confusion and fear, but Bolin and the other deputies, including Deputies Wyrick, Macias, Gonzalez, Garcia, and Perez, offered no answers.

32.    Instead, Deputy Bolin forcefully yanked Palumbo out of the vehicle, violently slamming him onto the pavement face-first.

33.    Willis watched helplessly, horrified, as his friend was brutally thrown to the ground. Palumbo instinctively attempted to break his fall with his right arm, sustaining severe and immediate pain in his wrist.

34.    Deputy Bolin continued his violent assault, jerking Palumbo back to his feet and then deliberately slamming his head against the side of Palumbo's own vehicle, causing a visible and bleeding wound.

35.    Throughout this ordeal, Deputies Wyrick, Macias, Gonzalez, Garcia, and Perez observed Bolin's use of force firsthand but none of the deputies intervened or expressed concern, passively condoning the violence unfolding before their eyes.

36.    They failed to act appropriately in the use of force against the plaintiffs.

37.    Rather than intervene to prevent the continued harm, including the unlawful arrest, these deputies assisted in by allowing the unlawful arrests to occur, despite lacking any probable cause.

38.    As Palumbo stood dazed and injured, Bolin falsely accused him loudly of kicking Bolin in the groin, a blatant fabrication. Bolin then angrily punched Palumbo multiple times in the chest, explicitly telling Palumbo, "If you didn't have braces, I'd punch you in your face."

39.    Palumbo, bleeding, cold, and disoriented, was then roughly shoved into the back seat of Bolin's patrol cruiser.

40.    Despite Palumbo's obvious injuries, Deputy Bolin deliberately intensified his discomfort by turning the cruiser's air conditioning on full blast. Palumbo begged for relief, but none was given.

41.    Willis, still recording at a safe distance, was stunned when deputies noticed his filming and aggressively warned him to stop recording or face arrest.

42.    Immediately complying, Willis ceased filming out of fear of further retaliation, but remained nearby, still deeply worried about Palumbo. The teenage high school student desperately tried to contact his parents, but received no immediate response.

43.    Willis asked a tow truck driver on scene to help move his stalled vehicle into a nearby parking lot, but the driver demanded a fee Willis did not have.

44.    Moments later, deputies approached Willis, questioning whether the stalled vehicle was his. When Willis truthfully affirmed, deputies arrested him without offering any opportunity to explain the emergency nature of his situation or mention his previous call to authorities.

45.    Willis was unjustly charged with "blocking traffic" despite having clearly taken all possible responsible actions to avoid traffic obstruction.

46.    Handcuffed and placed into another deputy cruiser, Willis overheard Deputy Bolin cruelly mocking him and his passenger, suggesting they were pretending to be thugs, referencing that Willis's mother was a school principal and the passenger's mother was a peace officer.

47.    This humiliation added insult to injury. He shared this information to help his parents be located not for any other reason.

48.    Both Willis and Palumbo were transported first to the Clay Road Substation, then transferred to the Harris County Joint Processing Center downtown.

49.    At no point during transport, booking, or detention did any deputy offer Palumbo medical attention, despite clear and serious injuries.

9

50.    Palumbo faced fraudulent felony charges of assaulting an officer, and Willis faced a fabricated misdemeanor obstruction charge.

51.    Both charges were quickly dismissed by prosecutors, who recognized immediately there had been no probable cause for the arrests or accusations.

52.    Willis and Palumbo were both law-abiding high school students with no prior negative encounters with law enforcement, the trauma of that afternoon continues to linger.

53.    The emotional harm, physical pain, and deep sense of injustice they endured at the hands of deputies Bolin, Wyrick, Macias, Gonzalez, Garcia, and Perez remain vivid and lasting reminders of an egregious abuse of power.

54.    These young men, who began that day as ordinary high school students doing nothing more than helping a friend stranded in a stalled car, ended it as victims of racial profiling, police brutality, malicious prosecution, and deliberate indifference to their constitutional rights, inflicted without justification by the very officers sworn to protect them.

55.    Harris County and Sheriff González have previously faced allegations of unlawful arrest against these same officers, Christopher Bolin, Shane Wyrick, Anthony Macias, Johnathan González, Martín García, and Roland Pérez, for making arrests without probable cause and or using unreasonable force.

## V. CLAIMS FOR RELIEF

Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

**A.  Monell Liability – Harris County and Sheriff Ed Gonzalez (42 U.S.C. § 1983)**

56. Defendants Harris County and Sheriff Ed Gonzalez, acting in his official and individual capacities, maintained and perpetuated unconstitutional policies, customs, or practices that resulted in the deprivation of Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments. These included a systemic failure to discipline, supervise, or retrain deputies who engaged in arrests lacking probable cause, excessive force, and retaliatory conduct.

57. From 2019 to 2024, five deputies, including all named individual Defendants, collectively accounted for 203 dismissed arrests for various reasons.

58. Of those 203 dismissals, 48 dismissals (23.6%) were explicitly for lack of probable cause, and an additional 24 cases (11.8%) were dismissed due to insufficient evidence or prosecutorial interest of justice.

59. Below, regarding the named Defendants, Plaintiffs demonstrate a disturbing pattern in which individuals, many of them ultimately exonerated, are routinely burdened with trumped-up or falsified charges.

60.  In over 200 instances, Defendant deputies' arrests were dismissed, and specifically 48 were dismissed for lack of probable cause in the following cases involving defendants Christopher Bolin, Shane Wyrick, Anthony Macias, Johnathan González, Martín García, and Roland Pérez:

61. On March 19, 2019, MCCADAMS, MELVIN was arrested for evading arrest/detention by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

62. On February 19, 2021, LAZARD, QUINTON was arrested for interfering with duties of a public servant by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

63. On March 7, 2021, GUTIERREZ, PRISCILLA was arrested for interfering with duties of a public servant by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

64. On March 11, 2022, 2022, HERNANDEZ-JUAREZ, ANGEL was arrested for failing to identify to police officer false information/f by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

65. On February 12, 2022, LEE, ELIJAH M was arrested for interfering with duties of a public servant by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

66. On September 5, 2020, MARTINEZ, ASHLEY was arrested for evading arrest/detention with a vehicle by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

67. On April 7, 2023, PALUMBO, SETH was arrested for ASSAULT OF PEACE OFFICER by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest, this case.

68. On April 21, 2020, BOOKER, JEREMIAH was arrested for interfering with duties of a public servant by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

69. On AUGUST 28, 2020, RINCHIUSO, FRANCIS was arrested for interfering with duties of a public servant by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

70. On February 26, 2021, LOVELY, JAIONDRICK was arrested for interfering with duties of a public servant by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

71. On November 11, 2022, PARKS, JOSEPH was arrested for failing to identify to police officer false information/f by defendant BOLIN. The case was dismissed based on lack of probable cause for the arrest.

72. On JANUARY 15, 2022, MILLIGAN, ASHLYN was arrested for resisting arrest-search by defendant BOLIN. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

73. On October 14, 2020, SCOTT, BRANDON was arrested for evading arrest/detention with vehicle by defendant BOLIN. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial.

74. On December 5, 2022, MAYES, JOLANIE was arrested for evading arrest/detention with vehicle by defendant BOLIN. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

13

75. On September 11, 2023, BROWN, COREY LAMOND was arrested for failing to identify to police officer false information/f by defendant WYRICK. The case was dismissed based on lack of probable cause for the arrest.

76. On February 8, 2023, BOLT, MARCUS TYRONE was arrested for evading arrest/detention by defendant WYRICK. The case was dismissed based on lack of probable cause for the arrest.

77. On April 5, 2023, RADLOFF, ERIC NORMAN was arrested for evading arrest/detention by defendant WYRICK. The case was dismissed based on lack of probable cause for the arrest.

78. On October 1, 2024, VAUGHNER, DAMONE TERRELL was arrested for evading arrest/detention by defendant WYRICK. The case was dismissed based on lack of probable cause for the arrest.

79. On February 24, 2021, RHEM, JOCEE JADA LEE was arrested for evading arrest/detention by defendant WYRICK. The case was dismissed based on lack of probable cause for the arrest.

80. On May 10, 2022, THEUS, PATRICK BERNARD was arrested for failing to identify to police officer false information by defendant WYRICK. The case was dismissed based on lack of probable cause for the arrest.

81. On December 2, 2022, LUTHI, KAITLYN was arrested for evading arrest/detention by defendant WYRICK. The case was dismissed based on lack of probable cause for the arrest.

82. On April 13, 2023, BENNETT, CHAKRIS LEE was arrested for resisting arrest-search by defendant WYRICK. The case was dismissed based on lack of probable cause for the arrest.

83. On April 29, 2021, MORENO, DAVID VICTOR was arrested for failing to identify to police officer false information/f by defendant WYRICK. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

84. On AUGUST 22, 2021, STEVENSON, RAYQUAN COUVISIA KURTI was arrested for evading arrest/detention by defendant WYRICK. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

85. On AUGUST 19, 2021, REED, WILBERT DIONDRE was arrested for evading arrest/detention with vehicle by defendant WYRICK. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

86. On February 23, 2024, JONES, PHILLIP was arrested for evading arrest/detention by defendant WYRICK. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

87. On April 11, 2021, ANTUNEZ, EDGARDO was arrested for fleeing/ attempting to elude police officers by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

88. On July 2, 2021, MENENDEZ, FRANKLIN was arrested for failing to identify to police officers false information by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

89. On JANUARY 27, 2022, AZIZ, AMAD was arrested for evading arrest/detention by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

90. On February 27, 2022, HAWTHORNE, ARRYON was arrested for failing to identify to police officers false information by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

91. On AUGUST 19, 2022, THOMPSON, MARQUIS was arrested for evading arrest/detention by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

92. On April 12, 2023, GREEN, LOGAN was arrested for interfering with duties of a public servant by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

93. On March 8, 2024, JONES, ANTHONY was arrested for failing to identify to police officer-Fugitive by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

94. On December 14, 2020, FLORES, ERNESTO JR was arrested for assault of a peace officer by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

95. On April 10, 2021, ANTUNEZ, EDGARDO was arrested for evading arrest/detention with a vehicle by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

96. On May 2, 2024, FORD JR., ANTHONY JAMES was arrested for evading arrest/detention by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

97. On May 7, 2021, DUGAR, JAVONTRE was arrested for evading arrest/detention by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

98. On September 30, 2022, EDWARDS, THADDEAUS was arrested for failing to identify to police officer false information/f by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

99. On November 11, 2022, MONTOYA, RAEDYN was arrested for evading arrest/detention by defendant MACIAS. The case was dismissed based on lack of probable cause for the arrest.

100. On May 23, 2020, SHARP, HENRY was arrested for evading arrest/detention with a vehicle by defendant MACIAS. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial..

101. On March 24, 2023, WILDER, OBIE was arrested for interfering with duties of a public servant by defendant MACIAS. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

102.    On May 23, 2024, GAUDIELLO, DAVID was arrested for evading arrest/detention by defendant MACIAS. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

103.    On September 19, 2024, NICHOLS, COREY was arrested for interfering with duties of a public servant by defendant MACIAS. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

104.    On November 7, 2024, SISTO, SUNNY was arrested for evading arrest/detention by defendant MACIAS. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

105.    On November 19, 2019, COSME, EDWIN was arrested for assault of a peace officer by defendant MACIAS. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial..

106.    On October 10, 2021, BROWN, BRITTANIE was arrested for ATT assault of a peace officer by defendant MACIAS. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

107.    On JANUARY 21 , 2022, ABREGO ROMERO, MARCOS was arrested for evading arrest/detention with vehicle by defendant MACIAS. The case was

dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial.

108.    On July 14, 2023, FELIX, KEANDRE was arrested for failing to identify to police officers false information by defendant MACIAS. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

109.    On June 11, 2023, BRANTLEY, KENDRICK was arrested for failing to identify to police officer-fugitive by defendant MACIAS. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

110.    On March 1, 2023, BROWN, MARCUS was arrested for evading arrest/detention with vehicle by defendant MACIAS. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

111.    On July 18, 2021, PERKINS, TAQUERIA was arrested for interfering with duties of a public servant by defendant J. GONZALEZ. The case was dismissed based on lack of probable cause for the arrest.

112.    On December 30, 2021, BELL, CHASITY NICOLE was arrested for interfering with duties of a public servant by defendant J. GONZALEZ. The case was dismissed based on lack of probable cause for the arrest.

113.    On AUGUST 4, 2023, GARZA, GINO was arrested for evading arrest/detention by defendant J. GONZALEZ. The case was dismissed based on lack of probable cause for the arrest.

114.   On April 21, 2021, SCOTT, HORACE was arrested for evading arrest/detention with a vehicle by defendant J. GONZALEZ. The case was dismissed based on lack of probable cause for the arrest.

115.   On May 15, 2021, FAISON, BRANDON was arrested for assault of a peace officer by defendant J. GONZALEZ. The case was dismissed based on lack of probable cause for the arrest.

116.   On May 16, 2021, FAISON, BRANDON was arrested for assault of a peace officer by defendant J. GONZALEZ. The case was dismissed based on lack of probable cause for the arrest.

117.   On April 2, 2021, PRICE, ROKEISHA ROSHA was arrested for failing to identify to a police officer false information by defendant J. GONZALEZ. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial..

118.   On March 5, 2022, HUNTINGTON, DEVAUGHN was arrested for fleeing/ attempting to elude police officers by defendant J. GONZALEZ. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

119.   On July 18, 2023, PAUL, TROY was arrested for failing to identify to a police officer false information by defendant J. GONZALEZ. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

120.    On July 19, 2023, HOLMAN, QUINDARIUS MARQUIL was arrested for interfering with duties of a public servant by defendant GARCIA. The case was dismissed based on lack of probable cause for the arrest.

121.    On June 27, 2020, BROOKS, LEE was arrested for interfering with duties of a public servant by defendant GARCIA. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial..

122.    On JANUARY 25, 2023, HENRY, EMMANUEL SHEPHERD was arrested for evading arrest/detention by defendant GARCIA. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

123.    On April 4, 2024, AGUIAR-MARTINEZ, LUIS A. was arrested for evading arrest/detention with a vehicle by defendant GARCIA. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

124.    In this small data set, it cannot be overlooked that Deputy Wyrick had 47.2% of his 36 dismissed cases attributed to lack of probable cause, while Deputy Bolin had 20.8% of his 53 dismissed cases dismissed for the same reason.

125.    These figures, standing alone, reflect entrenched patterns of abusive arrest practices that should have triggered internal review and disciplinary action.

126.    Despite clear warning signs, Sheriff Gonzalez failed to initiate investigations, enforce accountability, or impose remedial training. His individual inaction in response to persistent red flags constituted deliberate indifference and ratified the

unconstitutional conduct of his subordinates. The failure to correct or remove officers who repeatedly violated constitutional norms signaled institutional tolerance and was a moving force behind the injuries sustained by Plaintiffs. Below, Plaintiffs demonstrate a disturbing pattern in which individuals, many of them ultimately exonerated, are routinely burdened with trumped-up or falsified charges.

127.    This practice is not confined to the named Defendants and reflects a broader institutional culture of unconstitutional enforcement. signaled institutional tolerance and was a moving force behind the injuries sustained by Plaintiffs.

128.    Below, in a random smaller sampling, the pattern persists.

129.    These figures were not anomalous. Even a small sampling of non-defendant deputies, such as Deputies Aguirre, Branch, and Carpenter, revealed disproportionately high dismissal rates, many for lack of probable cause or insufficient evidence. The consistency of these outcomes across multiple deputies, both named and non-named, underscores the depth and breadth of the systemic failures within the Harris County Sheriff's Office.

130.    This statistical showing is disturbing and confirms that the unconstitutional practices documented here were not isolated or exceptional. injuries sustained by Plaintiffs.

131.    In this smaller random sampling, during the same time period used for the named Defendants, 2019 through 2024, this smaller random sample of three deputies accounted for a total of 85 dismissals over that span: 25 for Aguirre, 34 for Branch, and 26 for Carpenter.

132.    A representative subset of these dismissals, detailed herein, reflects recurring patterns of arrests terminated for lack of probable cause, insufficient evidence, or because an acquittal would have resulted at trial.

133.    Of the 19 representative cases reviewed in detail, 68.4% were dismissed explicitly for lack of probable cause, while the remaining 31.6% were dismissed due to insufficient evidence, prosecutorial inability to prove guilt beyond a reasonable doubt, or in the interest of justice.

134.    While this subset does not encompass the full population of dismissals by these deputies, it is probative of the qualitative nature of the constitutional deficiencies within the agency's arrest practices.

135.    That all 85 identified charges were ultimately dismissed, and that a significant portion were unsupported by probable cause, demonstrates that unlawful arrest is not limited to the named defendants, but rather reflects a pattern of widespread, systemic deficiencies in supervision, training, and adherence to Fourth Amendment standards.

136.    On December 12, 2020, TELLO, PABLO OSCAR was arrested for failing to identify to police officer false information/f by Deputy AGUIRRE, NOE. The case was dismissed based on lack of probable cause for the arrest.

137.    On AUGUST 6, 2019, BENAVEZ, MARK ANTHONY was arrested for failing to identify to a police officer false information by Deputy BRANCH, BRANDON. The case was dismissed based on lack of probable cause for the arrest.

138.    On November 11, 2019, BROWN, JOSEPH was arrested for failing to identify to police officer false information/f by Deputy BRANCH, BRANDON. The case was dismissed based on lack of probable cause for the arrest.

139.    On March 21, 2020, LOZANO, KARINA was arrested for resisting arrest-search by Deputy BRANCH, BRANDON. The case was dismissed based on lack of probable cause for the arrest.

140.    On March 28, 2020, CAREY, DUWAN was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. The case was dismissed based on lack of probable cause for the arrest.

141.    On June 25, 2020, WILLIAMS, JOENIQUE was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. The case was dismissed based on lack of probable cause for the arrest.

142.    On September 1, 2020, GABLE, TRAVIS was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. The case was dismissed based on lack of probable cause for the arrest.

143.    On September 1, 2020, GABLE, TRAVIS was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. The case was dismissed based on lack of probable cause for the arrest. (this is a difference case/matter which was also dismissed for no probable cause)

144.    On October 14, 2020, SIERRA, ALDOLFO was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. The case was dismissed based on lack of probable cause for the arrest.

145.    On November 2, 2021, WARFORD, KEONDREA was arrested for resisting arrest-search by Deputy BRANCH, BRANDON. The case was dismissed based on lack of probable cause for the arrest.

146.    On May 10, 2022, FLORES, CLAUDIA was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

147.    On July 22, 2020, DURAN, JULIAN was arrested for resist arr-search by Deputy BRANCH, BRANDON. The case was dismissed in the interest of justice, which would have resulted in an acquittal at trial.

148.    On December 28, 2020, DEROUSSELLE, GEOWANDA was arrested for resisting arrest-search by Deputy BRANCH, BRANDON. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial..

149.    On February 14, 2023, HUMBLE, SHANTALACE ZIZSELLE was arrested for interfering with duties of a public servant by Deputy STEVEN CARPENTER. The case was dismissed based on lack of probable cause for the arrest.

150.    On June 12, 2023, REidentify, DEONTA SEMAJ was arrested for failing to identify to police officer-Fugitive by Deputy STEVEN CARPENTER. The case was dismissed based on lack of probable cause for the arrest.

151.    On July 26,2023, NJOKU, JUDE was arrested for interfering with duties of a public servant by Deputy STEVEN CARPENTER. The case was dismissed based on lack of probable cause for the arrest.

152.  On June 19, 2024, RETTA, HECTOR was arrested for failing to identify to police officer false information/f by Deputy STEVEN CARPENTER. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

153.  On April 12, 2024, MOORE, CAYDEN MICHAEL was arrested for evading arrest/detention by Deputy STEVEN CARPENTER. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

154.  On November 7, 2024, MATTHEWS, BRANDON JAMES was arrested for evading arrest/detention by Deputy STEVEN CARPENTER. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

155.  These figures further support Plaintiffs Monell allegations that Harris County, through its Sheriff's Office, maintains an unconstitutional custom or practice of effectuating arrests without lawful cause, in violation of clearly established rights.

## B. Fourth Amendment – Unlawful Seizure and Excessive Force (42 U.S.C. § 1983)

Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

156.  Defendant Bolin unlawfully seized and arrested Plaintiffs without a warrant and in the absence of probable cause, in violation of the Fourth Amendment. These seizures were not supported by any objective facts suggesting criminal wrongdoing. Plaintiff Palumbo, in particular, was physically assaulted by Deputy Bolin, slammed to the ground, punched in the chest, and shoved into a patrol vehicle, despite

offering no resistance. This use of force was objectively unreasonable under clearly established law. These facts meet the elements set out in *Graham v. Connor*, 490 U.S. 386 (1989), for excessive force claims under the Fourth Amendment.

157.    The remaining individual Defendants - Wyrick, Macias, Gonzalez, Garcia, and Perez - were present at the scene and observed the interaction. Each had a reasonable opportunity to intervene and prevent the unlawful seizure and excessive force but failed to act. Their failure to do so renders them liable under established bystander liability doctrine as articulated in *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). This collective inaction facilitated a violation of Plaintiffs' clearly established constitutional rights under the Fourth Amendment and removed any pretense of lawful policing. These seizures were not supported by any objective facts suggesting criminal wrongdoing. Plaintiff Palumbo, in particular, was physically assaulted by Deputy Bolin, slammed to the ground, punched in the chest, and face forcefully banged into a patrol vehicle, despite offering no resistance. This use of force was objectively unreasonable under clearly established law.

158.    The remaining individual Defendants, Wyrick, Macias, Gonzalez, Garcia, and Perez, were present at the scene and observed the interaction. Each had a reasonable opportunity to intervene and prevent the unlawful seizure and excessive force but failed to act. Their failure to do so renders them liable under established bystander liability doctrine. This collective inaction facilitated a violation of Plaintiffs' clearly established constitutional rights under the Fourth Amendment. **C. First Amendment – Retaliation (42 U.S.C. § 1983)**

Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

159.    Plaintiff Willis was engaged in constitutionally protected speech and expressive conduct when he recorded law enforcement officers from a lawful distance in a public space. This act of observation and documentation is well-established as protected under the First Amendment.

160.    In response to this protected conduct, Defendant deputies, including Bolin, threatened Willis with arrest and shortly thereafter followed through with that threat despite no evidence that Willis had committed any criminal offense. Willis ceased recording when ordered to do so, yet was arrested moments later for an obstruction offense that bore no relation to his conduct. This sequence of events supports a strong inference of retaliatory intent.

161.    The arrest of Willis was substantially motivated by his protected expression and would not have occurred but for his attempt to document police conduct. These allegations satisfy the "but-for" causation standard under *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), and establish a violation of clearly established First Amendment rights as recognized by courts within the Fifth Circuit and nationwide.

## D. Failure to Intervene (42 U.S.C. § 1983)

Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

162.    Defendants Wyrick, Macias, Gonzalez, Garcia, and Perez were present at the scene and personally observed the use of excessive force against Plaintiff Palumbo, as well as the unlawful arrest of both Plaintiffs. Each had a realistic opportunity to

prevent or mitigate these constitutional violations but failed to take any reasonable steps to intervene.

163.    Their inaction occurred despite clearly established law requiring officers to intervene when witnessing fellow officers engaging in unconstitutional conduct. The failure to act by these Defendants enabled and perpetuated the violation of Plaintiffs' rights and constitutes an independent basis for liability under the Fourth and Fourteenth Amendments.

**E. Fourteenth Amendment - Equal Protection (42 U.S.C. § 1983)**

Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

164.    Plaintiffs were intentionally treated less favorably than similarly situated individuals on account of their race and expressive conduct. Both Plaintiffs are African American males who were unarmed, non-threatening, and compliant. Despite this, they were forcefully detained, falsely charged, and denied medical attention.

165.    Defendant Bolin made disparaging comments about Plaintiffs' backgrounds, referencing their parents' professions in a mocking manner, suggesting racial and cultural bias influenced his actions.

166.    No similarly situated non-Black individuals engaging in comparable conduct would have been subjected to the same level of force or retaliatory arrest.

167.    The actions of Defendants were motivated by discriminatory purpose and constituted a violation of Plaintiffs' clearly established rights under the Equal Protection Clause of the Fourteenth Amendment.

29

168.   Constitutional claims under 42 USC 1983 were enacted by congress in 1871 under the first section of the Klu Klux Klan act based on the unwillingness of the state government to protect the constitutional rights of African Americans after the civil war, when the Klu Klux Klan and its sympathizers would terrorize and engage in racial violence against African Americans, newly freed slaves, and their allies. Many of the perpetrators of violence included law enforcement who acted with impunity. The barbaric actions included lynching, torture and and acts beyond what many of us could imagine.  It was designed to open the court to the aggrieved, not close it. The act has expanded to cover against state actors who violate the constitutional civil rights of anyone while acting under the colors of state law, the federal government was a refuge for the protected class of citizens, African Americans and others, against the unlawful conduct by these state officials.

169.   Plaintiffs were treated differently than similarly situated individuals due to their race and viewpoint.

170.   Both plaintiffs present as African-American males.

171.   Arrests by race from Harris County Sheriff's Office (2018–2024) for offenses involving officers as complaining witnesses:

Black (B): 3,459 arrests

White (W): 3,187 arrests of the total 50% of the arrest made based on officer complaints have Spanish surnames indicating Latino descent.

Asian (A): 83 arrests

Unknown (U): 53

Native American (I): 8

Blank/Unspecified: 20

172.    Defendants acted with discriminatory intent and a deliberate indifference to Plaintiffs' rights.

173.    This discriminatory conduct lacked any legitimate law enforcement justification.

**F. Failure to supervise, discipline, investigate, and Conspiracy to Violate Civil Rights (42 U.S.C. §§ 1983, 1985)**

Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

174.    Defendants, Pierce County and Sheriff Gonzalez knowingly and willfully agreed, formally or tacitly, to deprive Plaintiffs of their civil rights. This agreement was evidenced by coordinated actions taken before, during, and after the incident on April 6, 2023. Specifically, Defendants jointly participated in fabricating allegations, corroborating false narratives, and failing to report or correct obvious constitutional violations. These actions were not isolated errors, but deliberate efforts to conceal misconduct and protect one another from accountability.

175.    The conspiracy included overt acts in furtherance of the unlawful agreement, including the arrest, false reporting, and malicious prosecution of Plaintiffs, despite the absence of probable cause or legal justification. Each Defendant had knowledge of the plan's objectives and took steps to facilitate or endorse the unconstitutional outcomes. These coordinated efforts to violate clearly established rights, motivated by shared retaliatory or discriminatory intent, are actionable under both §§ 1983 and 1985.

**G. Malicious Prosecution (Fourth Amendment)**

Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

176.    Defendants Bolin, Wyrick, Macias, Gonzalez, Garcia, and Perez caused the initiation and continuation of criminal proceedings against Plaintiffs by submitting false, misleading, or grossly incomplete incident reports and failing to correct known falsehoods. These criminal charges, assault on a peace officer against Palumbo and obstruction against Willis, were not supported by probable cause and were intended to justify the excessive force and unlawful arrests already inflicted.

177.    Plaintiffs' charges were ultimately dismissed in their favor: prosecutors found insufficient evidence to proceed, confirming that the arrests were constitutionally baseless. The prosecution itself resulted in continued seizure of Plaintiffs' liberty, including detention, court obligations, and public accusation.

178.    Defendants' conduct was malicious and undertaken with reckless disregard for the truth. Their actions directly caused an unlawful seizure and violate Plaintiffs' rights under the Fourth Amendment, as recognized by Thompson v. Clark, 596 U.S. 36 (2022), and binding Fifth Circuit precedent.

**H. State Law Claims – Assault, Battery, False Imprisonment, Negligence**

Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

179.    Defendant Bolin physically assaulted Plaintiff Palumbo without legal justification. All individual Defendants participated in or facilitated unlawful restraint and detention. These acts constitute assault, battery, and false

imprisonment under Texas law. Defendants acted with malice and outside the scope of lawful authority.

## VII. DAMAGES

Plaintiffs suffered physical injuries, emotional distress, reputational harm, and loss of liberty. They incurred economic damages and legal costs. They seek:

a. Compensatory damages;

b. Punitive damages against individual Defendants;

c. Nominal damages for constitutional violations;

d. Attorneys' fees and costs under 42 U.S.C. § 1988;

e. Pre- and post-judgment interest;

Any other relief the Court deems just.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered against all Defendants, jointly and severally, and for all appropriate legal and equitable relief as requested above.

Respectfully Submitted,

33

_/s/Courtney A. Vincent_
**Courtney A. Vincent**
MN Bar No. 0403083
Federal Bar No. 3746531
Vincent Law, PLLC
P.O. Box 940129
Houston, Texas  77094
Tel: (713)223-9300
Fax: (832)603-4444
Email:
**info@vincentlawpllc.com**
_Attorney for Plaintiffs_
_Willis and Palumbo_

_/s/U.A. Lewis_
**U.A. Lewis**
TX Bar No. 24076511
Federal Bar No. 1645666
The Lewis Law Group
P O Box 27353
Houston, TX 77227
Tel: (713)570-6555
Fax: (713) 581-1017
Email:
**myattorneyatlaw@gmail.com**
_Attorney for Plaintiff Willis_

_/s/ Terry Henderson Peden, Jr._
**Terry Henderson Peden , Jr**
TX Bar Card No.: 24123963
The Law Group of THP, PLLC.
P.O. Box 1410
Houston, TX 77251
Tel: (334)544-9471
Fax: (334)460-9844
Email:
**thp@thelawgroupofthp.com**
_Attorney for Plaintiff Palumbo_

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following in accordance with the Federal Rules of Civil Procedure to all parties of record via ECF.

_/s/ UA Lewis_
UA Lewis